IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barney J. Osevala, III and   :
Jill M. Osevala, husband and wife, :
     Appellants  :
          :
   v.      :
          :
William F. Gaudette and William F. :
Gaudette, III and Anne L. Gaudette, : No. 1329 C.D. 2019
husband and wife    : Argued: September 15, 2020


BEFORE: HONORABLE P. KEVIN BROBSON, Judge
    HONORABLE ANNE E. COVEY, Judge
    HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION
BY JUDGE FIZZANO CANNON   FILED: October 9, 2020


   Barney J. Osevala, III and Jill M. Osevala, husband and wife (together, Osevalas), appeal the November 21, 2018 order of the Court of Common Pleas of Dauphin County (trial court) sustaining the preliminary objections of William F. Gaudette (Gaudette Senior) and William F. Gaudette, III (Gaudette Junior) and Anne L. Gaudette, husband and wife,[1] to the Osevalas' amended complaint and transferring the matter to the South Hanover Township Zoning Hearing Board (ZHB). Upon review, we reverse.

---

[1] As noted in the Gaudettes' brief, Anne was estranged from Gaudette Junior for a number of years and the two are now divorced. Gaudettes' Brief at 7 n.1. The Gaudettes claim that Anne signed over the deed to the property in question in marital equitable distribution and that they requested that the Osevalas stipulate to her dismissal from this action. *Id.* Purely to simplify matters, the Court will refer to the "Gaudettes" as owners of the property.

The facts as asserted in the amended complaint are as follows. The Osevalas own and reside at 117 Stone Mill Road, Hummelstown, Pennsylvania located in South Hanover Township (Township). Am. Compl. ¶ 1, Reproduced Record (R.R.) at 138a. Gaudette Senior owns and resides at 48 South Hoernerstown Road, Am. Compl. ¶ 2, R.R. at 139a, and Anne and Gaudette Junior own and reside at 65 South Hoernerstown Road, both located in the Township, Am. Compl. ¶¶ 2-4, R.R. at 139a. The Osevala Property is across Stone Mill Road from the properties owned by the Gaudettes. Am. Compl. ¶ 6, R.R. at 139a. The Gaudette properties are located within the Township's Floodplain District. Am. Compl. ¶¶ 7-8, R.R. at 139a; ZHB's Decision, 6/28/16, Finding of Fact (FOF) 10, R.R. at 207a-08a.

Over the past 15 years, Gaudette Junior developed and operated a field hockey camp and training facility on the two properties. Am. Compl. ¶ 9, R.R. at 139a. In order to construct and maintain the field hockey fields, Gaudette Junior transported large amounts of rock, fill, and soil onto the two Gaudette properties. Am. Compl. ¶ 10, R.R. at 139a-40a. Gaudette Junior and Senior never obtained a permit for placement of the fill or for any grading or excavation work, despite the fact that the properties are located within a floodplain. Am. Compl. ¶¶ 11-12, R.R. at 140a. The Osevalas claim that "[a]s a direct and proximate result of the placement of such fill on the properties, the floodplain has been impacted and both surface water runoff and flood waters have been directed onto [the Osevalas'] property." Am. Compl. ¶ 14, R.R. at 140a.

As such, the Osevalas filed a complaint in the trial court on October 14, 2015. R.R. at 4a-18a. On January 7, 2016, the Gaudettes filed preliminary objections to the complaint in the nature of a demurrer and failure to join an indispensable party, namely the Pennsylvania Department of Transportation (DOT).

2

R.R. at 19a-115a. Following oral argument, the trial court issued an order dated June 15, 2016, granting the Gaudettes' preliminary objection pertaining to alleged violation of the Township ordinances and giving the Osevalas 30 days to amend the complaint to include the specific ordinances allegedly violated. R.R. at 133a. The trial court further noted, with the Gaudettes' agreement, that the preliminary objection regarding the non-joinder of DOT was withdrawn. *Id.* The Osevalas filed their amended complaint on July 15, 2016, in compliance with the trial court's order. R.R. at 135a-51a.

Count I of the amended complaint asserted a private action under Section 617 of the Pennsylvania Municipalities Planning Code (MPC),[2] claiming that the Osevalas have been substantially affected by the Gaudettes' placement of unpermitted fill on their properties. Am. Compl. ¶¶ 37-39, R.R. at 144a-45a. Count II of the amended complaint asserted, generally, an action to abate a public nuisance under both the Township's Floodplain Ordinance and the Flood Plain Management Act.[3] Am. Compl. ¶ 41, R.R. at 145a. The Osevalas claim that the Gaudettes' filling, grading, and excavating of their properties constituted violations of the above and that the Osevalas qualified as aggrieved persons because their property has been directly impacted. Am. Compl. ¶¶ 41-42, R.R. at 145a-46a. Count III similarly asserted a public nuisance claim under the Township's Stormwater Management Ordinance and Section 15(a) of the Storm Water Management Act.[4] Am. Compl. ¶ 44, R.R. at 146a. Finally, Count IV asserted a common law nuisance claim asserting that the Gaudettes' alteration of the floodplain caused increased storm water runoff

---

[2] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10617.

[3] Act of October 4, 1978, P.L. 851, 32 P.S. §§ 679.101-679.601.

[4] Act of October 4, 1978, P.L. 864, *as amended*, 32 P.S. § 680.15(a).

and directly impacted the Osevalas' property and the quiet enjoyment thereof. Am. Compl. ¶¶ 47-48, R.R. at 147a. The Osevalas requested relief in the form of an order requiring the Gaudettes to: remove the fill and other materials placed on their properties in connection with the non-permitted development; restore the properties to their condition prior to the development; and abate the nuisance. Am. Compl. Wherefore Clauses, R.R. at 145a-47a. They also requested preliminary and permanent injunctive relief, costs, and attorney's fees. *Id.*

Again, the Gaudettes filed preliminary objections to the amended complaint, this time for failure to exercise or exhaust a statutory remedy, and sought to have all four counts dismissed. *See* Pa.R.C.P. No. 1028(a)(7); R.R. at 152a-64a. The Gaudettes asserted two different arguments with respect to their theory of failure to exhaust, both of which pertained to an outstanding investigation with the Township relating to the alleged unpermitted fill. First, the Gaudettes argued that the Osevalas were required to exhaust their statutory remedy and obtain a final determination from the ZHB before bringing an appeal to the trial court. R.R. at 162a. The Gaudettes argued that the Osevalas "[we]re prematurely asking [the trial court] to decide the very complaint that they raised with [the] Township and which [the] Township has yet to decide." *Id.* Second, the Gaudettes argued that the trial court lacked jurisdiction over the subject matter of the action because the Osevalas had "a complete, adequate and exclusive remedy under the [MPC] . . . ." *Id.* (citing *Ragano v. Rigot*, 360 A.2d 779 (Pa. Cmwlth. 1976)). In essence, the Gaudettes asserted that the claims raised in the present civil action were identical to or at least premised upon those raised in a purportedly related action pending before the ZHB.

While there is no related matter concerning the alleged unpermitted fill currently pending before the ZHB, we note that the Osevalas did file a complaint

4

investigation form with the Township alleging the Gaudettes were operating an outside business in a residential area, and that they illegally placed landfill in a federally mandated floodplain. R.R. at 157a-58a, 178a, 206a-07a. Following an investigation, Township Zoning Officer Frank Chlebnikow (Zoning Officer) issued a letter to "Mr. William Gaudette"[5] dated November 25, 2015 (Zoning Officer's Letter), concluding that Gaudette was not currently operating a business from the properties and, therefore, was not in violation of the Township ordinance. R.R. at 158a, 181a, 207a. The Zoning Officer's Letter went on to state, in pertinent part:

> Complaint Two – <u>illegal landfill in federally mandated floodplain</u>.
>
> This complaint, placing illegal landfill in a federally mandated floodplain, *is open and unresolved, and is currently being investigated by the Township*.
>
> The Township would like to work with you to resolve this complaint as quickly as possible; therefore, please contact me within five (5) days of receipt of this letter to schedule an on-site meeting. Failure to respond will result in the Township turning the complaint over to the Township Solicitor for formal enforcement action through the [] Township Zoning Office.

R.R. at 181a (underlining in original) (italics added).[6]

___

[5] The Zoning Officer's letter was mailed to Gaudette Senior's address, yet Gaudette Junior ran the field hockey club. As such, it is not clear for whom the letter was intended.

[6] We note that the documentation attached to the Gaudettes' preliminary objections also indicates that on April 30, 2015, the Department of Environmental Protection (DEP), Bureau of Water Quality Protection (Bureau), received a complaint stating that "Bill Gaudette" of 65 South Hoernerstown Road brought fill in and placed it in a floodplain on the east side of Kellock Run. R.R. at 159a, 187a. In a letter dated May 19, 2015, Resource Conservationist Matthew Willard stated that he made a site inspection of the Gaudettes' property to evaluate the erosion and sedimentation control measures and found no violations. R.R. at 159a-160a, 189a. The Gaudettes also attached to their preliminary objections Willard's earth disturbance inspection report. R.R. at

The Osevalas appealed the Zoning Officer's determination that the Gaudettes were not operating a business on their property in violation of the Township's ordinance. R.R. at 161a, 207a. Following several hearings, the ZHB issued a decision affirming the Zoning Officer's determination solely on that issue. R.R. at 205a-12a.[7] As of the filing of the Osevalas' appeal to this Court, the Township has yet to issue a notice of violation pertaining to the alleged illegal fill, and as such, the ZHB has not considered the same.

Returning now to the preliminary objections, following briefing and argument,[8] the trial court issued an order dated November 21, 2018 and filed November 26, 2018 (Trial Court Order), stating:

> [the Gaudettes'] Preliminary Objections to [the] Amended Complaint are SUSTAINED. The Court may consider [the Osevalas'] claim for equitable relief only after disposition by the South Hanover Township Zoning Hearing Board.
>
> We hereby TRANSFER the matter to the South Hanover Township Zoning Hearing Board.

R.R. at 231a. The Osevalas then appealed to the Superior Court, which transferred the matter to this Court.

---

160a, 190a-93a. The Gaudettes' preliminary objections do not assert that DEP has jurisdiction over any of the claims in the amended complaint or that the Osevalas had an administrative remedy before either DEP or the Bureau.

[7] Notably, the ZHB's decision states, "[w]hether or not the noise level violates Township ordinances or constitutes a *common law nuisance* are not issues which this [ZHB] has authority to review." ZHB's Decision, 6/28/16 at 6, R.R. at 211a (emphasis added).

[8] We note that the action in the trial court was automatically stayed as a result of Gaudette Junior filing a Bankruptcy Petition in the United States Bankruptcy Court for the Middle District of Pennsylvania, and the action remained stayed until June 2018. *See* R.R. at 2a; Gaudettes' Brief at 9-10.

On June 27, 2019, the Gaudettes filed with this Court what was titled a "Motion to Strike Exhibit Outside the Record," seeking to strike a December 19, 2018 letter from the ZHB's Solicitor. Motion to Strike, 6/27/19 at 1-3. The Gaudettes' motion also argued that the Trial Court Order was not a final order, which the Pennsylvania Rules of Appellate Procedure (Pa.R.A.P. or Rules) define, in pertinent part, as an order that "disposes of all claims and of all parties . . . ." Pa.R.A.P. 341(b)(1). *See* Motion to Strike, 6/27/19 at 3-4. The Gaudettes argued that the Trial Court neither disposed of all claims nor disposed of all parties, therefore the appeal should be quashed. *Id.* By order dated December 2, 2019, this Court granted the portion of the motion seeking to strike the exhibit and ordered that the portion of the motion seeking to quash the appeal be listed for disposition along with the merits. Cmwlth. Ct. Order, 12/2/19.

The Gaudettes now argue that the Trial Court Order is not an appealable order under any applicable statute or rule. Gaudettes' Brief at 22-29. They specifically assert it does not meet the standard under Pa.R.A.P. 341(b)(1) because the Trial Court Order preserved the Osevalas' claims by transferring them to the proper forum—the ZHB. Gaudettes' Brief at 24. Moreover, the Gaudettes argue that even though the Trial Court Order states that the preliminary objections are sustained, it did not dismiss the Osevalas' claims based on private nuisance, "but rather determined that the claims would be addressed by the [trial c]ourt 'after disposition by the [] Board.'" *Id.* at 25 (quoting Trial Court Order, R.R. at 231a).

The Osevalas, in turn, argue that their underlying case in the trial court involves private causes of action authorized by Pennsylvania statutes that do not require or even authorize the involvement of the ZHB. Osevalas' Brief at 8, 10-13. Rather, the courts of common pleas and the Commonwealth Court are vested with

jurisdiction over such claims and, therefore, the trial court lacked authority to transfer the matter to the ZHB. *Id.* at 10-13. As such, the Osevalas argue that the Trial Court Order constitutes a final order disposing of all claims and of all parties pursuant to Pa.R.A.P. 341(b)(1). *Id.* at 13-15.

In general, only final orders of a government unit or trial court may be appealed to an appellate court. Pa.R.A.P. 341(a). As stated earlier, Rule 341(b)(1) defines a final order as "any order that . . . disposes of all claims and of all parties . . . ." Pa.R.A.P. 341(b).[9] When a trial court sustains preliminary objections, with no leave to amend the complaint, judgment is entered in favor of the defendant; this is a final appealable order. *See Feingold v. Bell of Pa.*, 383 A.2d 791, 792 n.1 (Pa. 1977); *Hudock v. Donegal Mut. Ins. Co.*, 264 A.2d 668 (Pa. 1970); *see also* 20 Pa. Appellate Practice § 341:3:1 (West 2019-2020 ed.). Importantly, the Gaudettes' preliminary objections sought to dismiss all four counts of the amended complaint in their entirety, and the trial court sustained the objections. Thus, the order sustaining the preliminary objections was a final appealable order as it disposed of all claims and all parties. There was nothing left for the trial court to transfer to the ZHB, and the trial court erred to the extent that its order purports to make such a transfer. Therefore, the Gaudettes' motion to quash the appeal is denied.

Turning now to the merits of the trial court's decision to sustain the preliminary objections, we examine each count of the amended complaint. Count I purports to assert a cause of action under Section 617 of the MPC, 53 P.S. § 10617, for violation of the Township's ordinance and to abate the Gaudettes' placement of

---

[9] It is undisputed that the trial court did not make an express determination that an immediate appeal would facilitate resolution of the entire case, nor did the Osevalas file an application for a determination of finality pursuant to Pa.R.A.P. 341(c).

non-permitted fill on their properties. *See* R.R. at 144a-45a. Section 617 of the MPC provides:

> In case any building, structure, landscaping or land is, or is proposed to be, erected, constructed, reconstructed, altered, converted, maintained or used in violation of any ordinance enacted under this act or prior enabling laws, the governing body or, with the approval of the governing body, an officer of the municipality, or *any aggrieved owner* or tenant of real property who shows that his property or person *will be substantially affected by the alleged violation*, in addition to other remedies, may institute any appropriate action or proceeding to prevent, restrain, correct or abate such building, structure, landscaping or land, or to prevent, in or about such premises, any act, conduct, business or use constituting a violation. When any such action is instituted by a landowner or tenant, notice of that action shall be served upon the municipality at least 30 days prior to the time the action is begun by serving a copy of the complaint on the governing body of the municipality. No such action may be maintained until such notice has been given.

53 P.S. § 10617 (emphasis added). By its plain language, this section permits a private cause of action where a violation is "alleged" and does not require that a violation be finally determined by a municipality before an action can be brought. *Id.* Additionally, this Court has previously rejected an argument that Section 617 deprives a court of jurisdiction in equity because there are other statutory remedies available to the moving party "under the township's zoning and land use ordinances, and presumably under Acts of the General Assembly." *South Fayette Twp. v. The Boy's Home*, 376 A.2d 663, 665 (Pa. Cmwlth. 1977). This Court found this argument "totally devoid of merit" and held that Section 617 of the MPC empowers actions to restrain the use of land in violation of township ordinances enacted

9

pursuant to the MPC. *Id.*; *see also, Bradley v. South Londonderry Twp.*, 440 A.2d 665, 668-69 (Pa. Cmwlth. 1982) (noting there is no requirement to exhaust statutory remedies before seeking to enjoin alleged violation of zoning ordinance in equity action in court of common pleas).

Counts II and III of the amended complaint assert private actions to abate a public nuisance under the Flood Plain Management Act and the Storm Water Management Act, respectively, for violation of Township ordinances and for violation of the acts themselves. *See* R.R. at 145a-46a. These actions do not require exhaustion of remedies before the zoning hearing board before they can be brought in the court of common pleas. The Pennsylvania Supreme Court's decision and analysis in *Frye Construction, Inc. v. City of Monongahela,* 584 A.2d 946 (Pa. 1991), is both analogous and instructive. As this Court has stated:

> In *Frye,* a landowner constructed a carrier pigeon loft in his backyard contrary to the permissible uses in the zoning ordinance. Thereafter, an adjacent landowner filed a complaint in equity to enforce the ordinance. Relying on Section 617 of the MPC, the Court determined that the adjacent landowner, "as an aggrieved neighbor, had an independent right to seek relief from a zoning violation next door and that right could be asserted in an equity action." [*Frye*,] 584 A.2d at 948. Further, the *Frye* Court held that when, "deliberate violations of a zoning ordinance have the effect of wrongfully infringing on the property rights of a neighbor, that neighbor is entitled to prompt vindication in a court of equity without regard to alternate administrative remedies that might be available. We have always so held and we continue to do so." *Id.* at [] 948.

*Peden v. Gambone Bros. Dev. Co.*, 798 A.2d 305, 312 (Pa. Cmwlth. 2002).

Similarly, here we find that the Osevalas, as adjacent landowners, have an independent right to seek equitable relief under both the Storm Water Management Act and the Flood Plain Management Act. As neighbors claiming that their property has been affected by the placement of alleged non-permitted fill on the adjacent property, they are entitled to have their case heard in a court of equity without regard to alternate administrative remedies that might be available. Such an interpretation is consistent with the following sections of the Storm Water Management Act: Section 16(b), 32 P.S. § 680.16(b), providing "[i]t is hereby declared to be the purpose of this act to provide additional and cumulative remedies to abate nuisances"; Section 13, 32 P.S. § 680.13, setting forth obligations of landowners engaged in the alteration of land to implement measures reasonably necessary to prevent injury to health, safety, or other property; and Section 15, 32 P.S. § 680.15, stating any person injured due to violations of the act can recover damages in an action at law and may further seek injunctive relief in an action in equity. *See also Merlino v. Delaware Cty.,* 711 A.2d 1100 (Pa. Cmwlth. 1998) (holding aggrieved landowners had standing to bring a private cause of action under the Storm Water Management Act). Notably, Section 502(b) of the Flood Plain Management Act also provides that "[s]uits to restrain, prevent or abate violation of this act or of any flood plain management regulations may be instituted in equity or at law by . . . any aggrieved person." 32 P.S. § 679.502(b).

Moreover, Section 502(b) of the Flood Plain Management Act provides that "[s]uch proceedings may be prosecuted in the Commonwealth Court, or in the court of common pleas of the county where the obstruction exists, conduct occurs, or the public affected, and to that end jurisdiction is hereby conferred in law and

11

equity upon such courts." 32 P.S. § 679.502(b).  The Storm Water Management Act contains a similar provision, stating:

> [s]uits to restrain, prevent or abate violation of this act or of any watershed storm water plan, regulations or ordinances adopted hereunder, may be instituted in equity or at law by the department, any affected county or municipality, or any aggrieved person.  Except in cases of emergency where, in the opinion of the court, the circumstances of the case require immediate abatement of the unlawful conduct, the court may, in its decree, fix a reasonable time during which the person responsible for the unlawful conduct shall correct or abate the same.

32 P.S. § 680.15.  Neither act requires that a township or zoning hearing board finally determine the issue of a violation prior to the assertion of a claim by an aggrieved person before a court.  As such, those parts of Counts II and III asserting violations of the Flood Plain Management Act and Storm Water Management Act were properly before the trial court and the trial court erred in sustaining the preliminary objections to these counts.

Lastly, Count IV of the amended complaint contains a common law nuisance claim.  The ZHB lacks jurisdiction over the Osevalas' public nuisance claim and the trial court erred in sustaining preliminary objections based upon any ZHB remedy or ZHB jurisdiction.  *See* Section 909.1 of the MPC, 53 P.S. § 10909.1; *see also* ZHB's Decision, 6/28/16 at 6; R.R. at 211a (acknowledging ZHB lacks jurisdiction over common law nuisance claim).  Where "a nuisance exists, equity may intervene to enjoin it even though there has been compliance with zoning acts and ordinances." *Mazeika v. Am. Oil Co.*, 118 A.2d 142 (Pa. 1955). *See also White v. Old York Rd. Country Club*, 185 A. 316, 318  (Pa. 1936) (providing "ordinances and the action of the authorities thereunder, [are] not controlling in cases involving

12

nuisances"); *Walker v. Del. Cty. Tr. Co.*, 171 A. 458, 459 (Pa. 1934) (noting "[a]cts of municipal officers under zoning legislation permitting the use of property for what is or may be a nuisance do not oust the jurisdiction of equity to determine whether a nuisance in fact exists and should be restrained"); *Appeal of Perrin*, 156 A. 305, 307 (Pa. 1931) (same).

Accordingly, the Gaudettes' motion to quash is denied. The trial court's order sustaining the Gaudettes' preliminary objections and purporting to transfer the matter to the ZHB is reversed, and the matter is remanded to the trial court.

_____
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barney J. Osevala, III and    :
Jill M. Osevala, husband and wife,    :
        Appellants    :
            :
        v.    :
            :
William F. Gaudette and William F.    :
Gaudette, III and Anne L. Gaudette,    :    No. 1329 C.D. 2019
husband and wife    :

## O R D E R

AND NOW, this 9th day of October, 2020, Appellees' Motion to Quash the Appeal is hereby DENIED. The order of the Court of Common Pleas of Dauphin County (trial court) sustaining the Preliminary Objections of the Appellees is REVERSED, and the matter is REMANDED to the trial court.

Jurisdiction relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge